**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Byron C.Q.,

Petitioner,

v.

Todd Lyons, et al.,

Respondents.

No. 26-cv-1302 (KMM/LIB)

**ORDER**

---

This matter is before the Court on the Amended Petition for a Writ of Habeas Corpus filed by Petitioner Byron C.Q. (Dkt. 4.) For the reasons that follow, the Petition is granted.

## BACKGROUND

Byron C.Q. is a citizen of Ecuador who has been in the United States since 2023. (*Id.* at 5, 14.[1]) He lives in Minneapolis with his partner and seven-year-old son. (*Id.* at 14.) Byron C.Q. entered the United States without inspection and was placed in removal proceedings pursuant to 8 U.S.C. § 1229a. (*Id.*) Around June 2024, Byron C.Q. filed an application for asylum, which is still pending. (*Id.*) Nonetheless, he was arrested on February 10, 2026 by immigration authorities without a warrant. (*Id.* at 2.) Bryon C.Q. is currently held at the St. Paul ICE field office in Fort Snelling, Minnesota. (*Id.* at 5.)

---

[1] Citations are to the page number of the Petition as each section restarts the paragraph sequence.

Respondents' position is that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2). (Dkt. 5.) They do not point to any other basis for his detention or suggest that he has criminal history triggering other mandatory detention provisions.[2]

**DISCUSSION**

This case is one of many filed in recent months in this district challenging the application of § 1225(b)(2) to aliens who are already in the United States, either having entered without inspection or having been previously released pursuant to 8 U.S.C. § 1226 or another statute. This Court has previously held that, because such people are not "seeking admission," as set forth in § 1225(b)(2), that provision—which mandates detention—does not apply to them. *See, e.g.*, *Belsai D.S. v. Bondi*, No. 25-cv-03682 (KMM/EMB), 2025 WL 2802947 (D. Minn. Oct. 1, 2025). The majority of courts to have considered these issues have reached the same conclusion. Additionally, although the Fifth Circuit just agreed with Respondents' reading of § 1225(b)(2), the Seventh Circuit has reached a different conclusion. *Compare Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at *4-10 (5th Cir. Feb. 6, 2026), *with Castanon-Nava v. DHS*, 161 F.4th 1048, 1061 (7th Cir. 2025). The Respondents' position is that the cases representing the majority view were wrongly decided and that the issue is currently pending before the Eighth Circuit in *Avila v. Bondi*, No. 25-3248 (8th Cir. docketed Nov. 10, 2025). However, Respondents acknowledge that this Court has rejected their position in prior cases, and they wish to preserve their arguments for any appeal.

---

[2] The Court appreciates Respondents' swift response, despite the filing of an amended petition in this case.

Although the Court has considered the arguments raised by the government, and reviewed the authority cited, the Court declines to repudiate its analysis from *Belsai D.S.* and instead continues to follow the analysis of the strong majority of courts to have considered the matter. Of course, these issues are complex, and the government's arguments are not frivolous. But the Court continues to believe that the better reading of the relevant statutory scheme is that § 1225(b)(2) does not apply to Byron C.Q. or others who are similarly situated, and his mandatory detention under that provision is not supported by the law.

The Court also notes that Byron C.Q.'s pending asylum petition does not alter the Court's conclusion that detention under § 1225(b)(2) is not appropriate. As U.S. District Court Judge Eric Tostrud recently noted in *Ahmed M. v. Bondi et. Al*, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *2 (D. Minn. Jan. 5, 2026) that "several courts have determined that asylum applications filed in like circumstances do not change the outcome." *Id.* (collecting cases). The reasoning in Judge Tostrud's opinion, and those of the cases he references, is sound, and the Court declines to find that Byron C.Q.'s application for asylum triggers mandatory detention under § 1225(b).

Byron C.Q. alleges that he should be immediately released or granted a bond hearing. The Court concludes that immediate release is appropriate in this case. The government has not claimed to have a "warrant issued by the Attorney General" supporting his recent arrest, nor has the government produced one to the Court. As Judge Tostrud also explained, "[s]ection 1226 provides that '*[o]n a warrant issued by the Attorney General*, an alien may be arrested and detained.'" *Id.* Judge Tostrud concluded that the issuance of

a warrant is a necessary prerequisite to even discretionary detention under § 1226(a), citing several decisions from other districts. *Id.* In *Ahmed M.*, like here, the petitioner had been rearrested with no warrant, and there were no allegations of a violation of the conditions of his previous release. Therefore, the appropriate remedy in *Ahmed M.* was immediate release rather than a detention hearing. *See also Juan S.R. v. Bondi*, 26-cv-05 (PJS/LIB) (Order, Dkt. 8, Jan. 12, 2026) (same). Because the Court here has before it neither the administrative warrant contemplated by § 1226, nor a suggestion that Byron C.Q. has done something that justifies revoking his prior release, release is the correct remedy.

**ORDER**

Based on the above, and on the full record before the Court, **IT IS HEREBY ORDERED THAT:**

1. Petitioner Byron C.Q.'s Amended Petition for a Writ of Habeas Corpus (Dkt. 4) is **GRANTED**.
2. The Court **DECLARES** that Byron C.Q. is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and **ENJOINS** Respondents from denying release or other relief on the basis that he is subject to such mandatory detention.
3. The Court **ORDERS** Respondents to immediately release Byron C.Q. in Minnesota, **and without any new conditions,** no later than **6:00 PM on February 14, 2026**.
4. Further, the Court **ORDERS** Respondents file a notice on ECF **by no later than 12:00 PM on February 15, 2026** certifying his release. If Byron C.Q. has not been released by that time, then Respondents shall advise the Court about the reasons his release has not occurred, and the specific steps Respondents are undertaking to ensure his immediate release in Minnesota.
5. Respondents must release Byron C.Q. with all of his personal property and documents. That property may not be altered by Respondents and must be returned in the same condition as when it was taken.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: February 13, 2026

*s/Katherine Menendez*
Katherine Menendez
United States District Judge